IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MOST VALUABLE PEPRSONNEL, LLC                                    PLAINTIFF

vs.                                                 Civil Action No. 3:13cv252-DAS

CLAY AND WRIGHT INSURANCE, INC.,
LIBERTY MUTUAL INSURANCE, INC., and
TRAVELERS COMMERCIAL INSURANCE, INC.                             DEFENDANTS

## CIVIL COMPLAINT

## PUNITIVE DAMAGES DEMANDED

## JURY TRIAL DEMANDED

Comes now the plaintiff in the above styled action, Most Valuable Personnel, LLC ("Most Valuable Personnel", or "MVP") by and through counsel, and files this civil complaint against defendants Clay and Wright Insurance, Inc. ("Clay and Wright"), Liberty Mutual Insurance, Inc. ("Liberty Mutual") and Travelers Commercial Insurance, Inc. ("Travelers").

## NATURE OF THE ACTION

1. This is a lawsuit for bad faith insurance fraud and negligence. Plaintiff seeks actual and punitive damages against each defendant severally and against defendant Clay and Wright jointly and severally.

## JURISDICTION AND VENUE

2. Plaintiff MVP is a Tennessee corporation. Defendant Clay and Wright

1

is a Mississippi corporation. Defendant Liberty Mutual is Massachusetts corporation, and defendant Travelers is a Connecticut corporation. This court thus has original jurisdiction under 28 U.S.C. § 1332 as the plaintiff and defendants are from different states and the aggregative amount in controversy exceeds $300,000 exclusive of interests and costs.

3. This court has personal jurisdiction over defendant Clay and Wright because Clay and Wright is a licensed insurance company registered with the Mississippi Secretary of State, and its principle place of business is within Mississippi. This court has personal jurisdiction over defendants Liberty Mutual and Travelers because both are licensed insurance companies registered with the Mississippi Insurance Commission, both have minimum contacts with Mississippi by virtue of their conducting business throughout the state, and both have availed themselves of Mississippi's laws.

4. Venue is proper because defendant Clay and Wright has its principle place of business at 3312 Goodman Road, Southaven, Mississippi 38671, which is located within the Oxford Division of the Northern District of Mississippi, and because most of the events that gave rise to the causes of actions in this complaint occurred in the Oxford Division of the Northern District of Mississippi.

## PARTIES

5. Plaintiff Most Valuable Personnel is a Tennessee corporation whose address and principle place of business is 3593 Riverdale Road, Suite 109, Memphis, Tennessee 38115.

6. Defendant Clay and Wright is a Mississippi corporation whose

2

address and principle place of business is 3312 Goodman Road, Southaven, Mississippi 38671. Its registered agent for service of process is owner Louis G. Clay, Jr., located at the same address given above, P.O. Box 126.

7. Defendant Liberty Mutual is a Massachusetts corporation whose home office address is 175 Berkeley Street, Boston, Massachusetts 02117-0140. Its registered agent for service of process is Charles A. Brewer, Esquire, 506 South President Street, Jackson, Mississippi 39201.

8. Defendant Travelers is a Connecticut corporation whose home office address is One Tower Square, Hartford, Connecticut 06183. Its registered agent for service of process is Charles A. Brewer, Esquire, 506 South President Street, Jackson, Mississippi 39201.

## FACTUAL ALLEGATIONS

9. Plaintiff Most Valuable Personnel ("MVP"), is a small Tennessee staffing company that provides temporary seasonal workers for its client companies in Mississippi and Tennessee. Andrea Mihelic owns and operates MVP. On or about September 2009, Mihelic visited the office of defendant Clay and Wright in Southaven, Mississippi. There, she met with Clay and Wright representative and insurance agent Debbie McNeal. Mihelic explained to McNeal that, although MVP staffed only Tennessee companies at the time, Diamond Comics, Inc. in Olive Branch, Mississippi would soon be MVP's biggest client and she would need workers' compensation coverage in both Tennessee and Mississippi. Thereupon, McNeal wrote MVP a workers' compensation policy through defendant Travelers. This policy became effective October 16, 2009.

3

10. On or about October 2011, defendant Travelers cancelled MVP's workers' compensation coverage in Mississippi after one of MVP's workers filed a claim for a work-related injury. Namely, an MVP employee named James Courtney got his hand caught and injured in a conveyer belt. The stated reason for the cancellation was that Travelers would not and had never intended to underwrite workers' compensation policies in Mississippi. MVP's attorney communicated with Travelers manager Mary Putney at that time. Putney indicated that Clay and Wright agent McNeal was to blame for writing MVP a workers' compensation policy on a Mississippi client and suggested that MVP sue Clay and Wright. Clay and Wright insisted they were not to blame and that the Travelers insurance policy was binding. Plaintiff agreed at the time with Clay and Wright because it was hard to believe that Travelers did not know it was underwriting a policy in Mississippi given that Travelers had underwritten MVP for two years, and each and every year Travelers provided a certificate of insurance to Diamond Comics, Inc. in Mississippi so that MVP could continue to do business with them.

11. It is possible that defendant Clay and Wright was negligent in writing MVP a Mississippi policy through Travelers, but plaintiff avers that this issue was probably pretextual. The real reason Travelers wanted to drop MVP's coverage is probably because this was MVP's second claim in two years and this injury was potentially more serious and costly than the last one. In fact, Travelers attempted not to pay the claim at all. It was only after MVP's attorney threatened a lawsuit that Travelers paid the claim, whereupon Travelers immediately dropped MVP's Mississippi coverage for its biggest client. The cancelation of coverage was

particularly harmful in that MVP was about to pass the three-year mark as a customer, and at that point MVP would pay lower rates.

12. Although MVP continued to use Travelers for its Tennessee clients, McNeal wrote MVP another workers' compensation policy with defendant Liberty Mutual to cover MVP's Mississippi clients. During the changeover, Michael Welch, an auditor for Liberty Mutual, personally visited both Diamond Comics, Inc. and Fraenkel, Inc. (MVP's only Mississippi clients at the time) and discovered that Travelers had been using the wrong NCCI codes. By way of explanation: In the staffing industry, it is customary for workers' compensation premiums to be based on codes provided by the National Council on Compensation Insurance (NCCI). These NCCI codes classify the type work that workers perform and thus affect the insured's premiums. For example, higher risk workers, such as window washers on skyscrapers, are billed at higher rates than clerical workers in safe, secure offices. According to Liberty Mutual auditor Welch, the NCCI codes Travelers had been using were costing MVP nearly double in premiums.

13. Welsh switched MVP's NCCI codes and coverage with Liberty Mutual continued as normal. However, Liberty Mutual charged MVP a $17,000 down payment, which was based on a percentage of MVP's estimated payroll for the next year. Without asking, and without obtaining a promissory note of any kind, Clay and Wright paid this down payment for MVP. According to McNeal, Louis Clay, owner of Clay and Wright, advanced the $17,000 down payment and told Mihelic to pay it back. MVP began paying back the $17,000 in weekly and monthly payments, but it put the small company in an extreme financial bind. In addition to the down

5

payment, Liberty Mutual's monthly premiums were costing MVP $3,000 a month, plus MVP was still paying Travelers for coverage for its Tennessee clients.

14. On or about May 21, 2012, MVP cancelled its coverage with Liberty Mutual in order to go with a single carrier, Chartis, to underwrite both its Tennessee and Mississippi clients as originally intended. On or about May 12, 2012, Mihelic requested a final audit from Liberty Mutual so that MVP would be paid its overcharges, because MVP had paid down payments and prospective premium payments for a whole year, not just six months. On or about March 19, 2013, *an entire year later*, Richard Childs performed Liberty Mutual's final audit. At first, it seemed the audit would bring good news. A few days after Childs' audit, Louis Clay, owner of Clay and Wright, phoned Mihelic and said that he received a copy of the audit and Liberty Mutual owed MVP $22,000. Unfortunately, Mihelic got a letter from Liberty Mutual a week after the audit and discovered that Childs had raised all the NCCI codes that Liberty Mutual auditor Michael Welch had previously assigned, thus negating all the refund that Liberty Mutual owed MVP. Moreover, Childs even said that MVP owed Liberty Mutual $1,600 more in premiums due to his assigning the new NCCI codes!

15. The down payment owed Chartis for the new coverage was approximately $22,000 plus a $10,580 a month premium. Mihelic made weekly or monthly payments to Clay and Wright from October 2011 through December 2012 for the previous $17,000 down payment to Liberty Mutual plus the ongoing insurance premiums. These unreasonably large monthly insurance costs were completely crippling MVP's cash flow, caused Mihelic extreme personal hardship,

and all but ran her small company into bankruptcy. To try and rescue her company from bankruptcy, Mihelic decided to use a funding company called TemPay to handle her payroll. She discovered that TemPay offered a pay-as-you-go ("pay-go") workers' compensation insurance program, and she signed up for it, eager to reduce her monthly insurance costs. On or about the end of September, well before the October 2012 annual monthly premium was due to Chartis, Mihelic contacted McNeal and told her that she wanted to cancel coverage with Chartis and go with the pay-go program through TemPay with AEG, another insurance company and MVP would thus no longer be working with Clay and Wright. Surprisingly, McNeal told Mihelic that she could have been providing her with pay-go insurance through Chartis or any of the other companies all along! Upon learning this, Mihelic instructed McNeal to switch MVP to pay-go through Chartis. However, at this point McNeal effectively stopped returning Mihelic's texts, emails and phone calls. When McNeal finally did reestablish communication with MVP, she informed Mihelic that Louis Clay, Clay and Wright's owner, had forgotten to cancel the monthly premiums with Chartis in time and that MVP still owed the $10,580 premium to Chartis for the month of October 2012. Mihelic had no choice but to pay it, because a staffing company cannot let its workers' compensation policies lapse and remain in business. Literally, MVP was held hostage.

16. MVP eventually switched over to the Chartis pay-go program, and MVP is now saving tens of thousands of dollars in monthly premiums. MVP's monthly insurance costs dropped from over $10,000 a month to roughly $1,200 a month. However, communications with McNeal have completely broken down and

Mihelic now deals directly with representatives from Chartis or their designated brokers. In fact, Mihelic herself set up the Chartis pay-go policy for MVP by going through Dan Fouts, a broker with a company called Market Scout.

17. On or about February 1, 2013, Mihelic spoke with Beverly Myers, an auditor with Chartis, and she explained to Myers all that had happened with Clay and Wright since she started using them as MVP's insurance agent in 2009. Myers was shocked and said that she had never heard of anything so outrageous. She said that in her view McNeal had systematically overbilled MVP roughly $70,000 or more for the 2012 year by frontloading the billing. Myers explained that McNeal had been commissioning off this overbilling and that she should be reported to the state insurance commissioner for acting in bad faith. In retrospect, Myers' statement makes sense. From the beginning, McNeal and Clay have tried to divert attention from themselves and place the blame for all the overbilling on the insurance companies whose policies they write. When Mihelic confronted McNeal about Travelers overbilling due to assigning the wrong NCCI codes, for instance, she said that it was too late to do anything about it. And Clay has said on many occasions, "We need to keep the lawyers out of this." When plaintiff finally did contact the Mississippi Insurance Commissioner to file a complaint on Clay and Wright, Clay retaliated by bringing suit in Tennessee General Sessions Court, suing for the balance owed on the $17,000 Liberty Mutual down payment. Plaintiff has records showing where MVP has paid most if not all of the moneys that Clay and Wright advanced. Regardless, plaintiff no longer intends to "keep the lawyers out of it." She now intends to settle up with all the named defendants for all their misdeeds.

## CAUSES OF ACTION AND DAMAGES

18.     Most of the causes of action stated below involve fraud. Miss. R. Civil Pro. 9(b) requires that "circumstances constituting fraud ... shall be stated with particularity." The facts in the paragraphs above are stated with particularity, now plaintiff will state the law with particularity. To prevail upon a claim of fraud in Mississippi, plaintiffs must prove the following nine elements:

> 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.

> *Levens v. Campbell*, 733 So.2d 753, 761–62 (Miss. 1999).

In meeting this burden of proof, plaintiff points out that there are two ways the common law recognizes that defendants can make false representations.

> *Fraudulent Concealment* is defined as existing where one party to a transaction, by concealment or other action, intentionally prevents the other from acquiring material information. Thus a defendant is subject to liability for a fraudulent misrepresentation if he paints over and so conceals a defect in a chattel or a building that he is endeavoring to sell to the plaintiff, and thus induces the plaintiff to buy it in ignorance of its defective character.

> Restatement (Second) Torts §550

> *Fraudulent Nondisclosure* arises where:

1.      One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

9

2.   One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) Torts § 551

## CAUSES OF ACTION AGAINST DEFENDANT TRAVELERS

19.   Plaintiff avers that defendant Travelers is guilty of bad faith and is liable for fraudulent cancellation of insurance coverage. Traveller's claimed that they cancelled MVP's workers' compensation coverage because they did not want to insure companies in Mississippi. Plaintiff avers this reason is pretext; the real reason Travelers cancelled MVP's coverage is probably because two of plaintiff's workers in Mississippi warehouses filed potentially costly claims within two years. At first, Travelers tried to cite their refusal to cover companies in Mississippi as a reason not to pay the claim; realizing they would fail in that attempt they then paid the claim, but they cancelled plaintiff's Mississippi coverage altogether. Regardless of its motivation, if Travelers knew at the outset that they would not insure companies in Mississippi and took the insurance premiums from plaintiff anyway, intending never to pay a claim on plaintiff's employees if presented, then they are

10

guilty of fraud. Since Travelers finally did pay the MVP employee's workers' compensation claim, plaintiff's consequent and proximate injury due to Travelers' fraudulent cancellation of insurance coverage is primarily that she would have paid lower premiums had she been allowed to continue coverage with Travelers past the three-year mark. Plaintiff therefore seeks the difference in what would have been her lower insurance premiums had she been allowed to continue coverage with Travelers past the three-year mark and what she actually paid with other insurance companies, plus interest. In addition, fraud is punishable by punitive damages, "the primary purpose [of which] is to punish the wrongdoer and deter similar misconduct in the future by the defendant" Miss. Code Ann. § 11-1-65(1)(e) (Rev. 2002). If Travelers is liable for intentionally and fraudulently canceling plaintiff's insurance coverage, plaintiff seeks all the consequential damages set forth above, plus punitive damages in the amount of nine times that pursuant to *State Farm vs. Campbell*, 538 U.S. 408 (2003). It is difficult to assign an actual dollar amount of damages for this injury until plaintiff does more discovery. However plaintiff estimates her consequential damages due to Travelers' wrongful cancellation of coverage to be approximately $100,000 and punitive damages nine times that.

20. Plaintiff avers that defendant Travelers is guilty of assigning the wrong NCCI codes to MVP's employees thus resulting in overbilling. Plaintiff pleads negligence and intentional fraud in the alternative. Either the overbilling was the result of oversight, in which case Travelers is liable for negligence; or else the overbilling was deliberate, in which case Travelers is liable for intentional fraud. If Travelers is liable for negligence only, plaintiff seeks damages in the amount of the

difference in what she should have paid in insurance premiums with the proper NCCI codes, plus interest. On the other hand, fraud is punishable by punitive damages, "the primary purpose [of which] is to punish the wrongdoer and deter similar misconduct in the future by the defendant" Miss. Code Ann. § 11-1-65(1)(e) (Rev. 2002). If Travelers is liable for intentionally and fraudulently overbilling plaintiff by assigning the wrong NCCI codes, plaintiff seeks all the consequential damages set forth above, plus punitive damages in the amount of nine times that pursuant to *State Farm vs. Campbell*, 538 U.S. 408 (2003). It is difficult to assign an actual dollar amount of damages for this injury until plaintiff does more discovery. However plaintiff estimates her consequential damages due to Travelers' wrongful overbilling to be approximately $100,000 and punitive damages nine times that.

## CAUSES OF ACTION AGAINST DEFENDANT LIBERTY MUTUAL

21. Plaintiff avers that defendant Liberty Mutual's audit by Richard Childs on or about March 19, 2013 was fraudulent, in that Childs deliberately and systematically set out to doctor the accounting records so that Liberty mutual would not have to pay the approximately $22,000 it owed MVP due to early termination of its policy. In particular, Childs changing the NCCI codes to higher rate codes than those assigned by Liberty Mutual's own auditor Michael Welch a year earlier was wholly without justification or excuse. Though the actual amount of damages may change due to further discovery, plaintiff's consequent and proximate injury due to the fraudulent audit is estimated at approximately $22,000. Furthermore, fraud is punishable by punitive damages, "the primary purpose [of which] is to punish the wrongdoer and deter similar misconduct in the future by the defendant" Miss. Code

Ann. § 11-1-65(1)(e) (Rev. 2002). Plaintiff seeks all the consequential damages set forth above, plus punitive damages in the amount of nine times that pursuant to *State Farm vs. Campbell*, 538 U.S. 408 (2003) and more if the facts warrant it. Specifically, *State Farm* held that ratios greater than 9:1 "may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages" *Ibid.*, at 425.

## CAUSES OF ACTION AGAINST DEFENDANT CLAY AND WRIGHT

22. Plaintiff avers that defendant Clay and Wright should be held jointly and severally liable for all the causes of action and injuries set forth against the other defendants above, plus the gross overbilling caused by not guiding plaintiff to a pay-go type of policy at the outset if its representation. Plaintiff pleads negligence and intentional fraud in the alternative. At the least, Clay and Wright is guilty of negligence and a breech of its fiduciary duty to safeguard plaintiff's interests. At the most, Clay and Wright is guilty of deliberately and intentionally defrauding plaintiff by allowing or encouraging systematic overbilling by the insurance companies it underwrites in order to commission off that overbilling. The facts of this case show that the only pecuniary interest Clay and Wright was serving was its own.

23. Though the actual amount of damages may change due to further discovery, plaintiff's consequent and proximate injury due to Clay and Wright's negligence and/or fraudulent overbilling is estimated at approximately $222,000 (see paragraphs 19-21 above) plus $10,581 in excess monthly premiums because Clay and Wright failed to timely move MVP to pay-go coverage in October of 2012 (see paragraph 15 above), plus at least $70,000 for frontloading the billing, although

13

this amount is very likely to be amended upward with further discovery (see paragraph 17 above). Furthermore, fraud is punishable by punitive damages, "the primary purpose [of which] is to punish the wrongdoer and deter similar misconduct in the future by the defendant" Miss. Code Ann. § 11-1-65(1)(e) (Rev. 2002). Plaintiff seeks all the consequential damages set forth above, plus punitive damages in the amount of nine times that pursuant to *State Farm vs. Campbell*, 538 U.S. 408 (2003).

### PRAYER FOR RELIEF

WHEREFORE, premises considered, plaintiff prays that this honorable court:

1. Enter a judgment including an award of consequential damages against defendant Travelers for $200,000.

2. Enter a judgment including an award of consequential damages against defendant Liberty Mutual for $22,000.

3. Enter judgment including an award of consequential damages against defendant Clay and Wright jointly and severally with the other defendants for $222,000, and against Clay and Wright severally for $80,581, for a total of $302,581.

4. Allow for upward adjustment of these consequential damages as further discovery might show is just.

5. Award punitive damages against each defendant up to nine times consequential damages pursuant to *State Farm vs. Campbell*, 538 U.S. 408 (2003) and more if the facts warrant it.

6. Award plaintiff interest on the consequential damages plus reasonable attorneys fees.

7. Award plaintiff any other general and equitable relief to which she may be entitled.

### JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted, this the 16th day of October 2013.

Plaintiff Most Valuable Personnel, LLC

By:

_____

Marvin Vining, MS Bar No. 8535
Attorney at Law, LLC
Attorney for Plaintiff
P.O. Box 250
Monticello, MS 39654
marvinvining@mac.com