IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

_____

MOST VALUABLE PERSONNEL, LLC,
ANDREA MIHELIC, INDIVIDUALLY
    Plaintiff,

VS.                                                         DOCKET NO. 3:13-cv-252-DAS
                                                           **Oral Argument Requested**

CLAY AND WRIGHT INSURANCE, INC.,
and DEBBIE MCNEAL, INDIVIDUALLY,

    Defendants.

_____

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
PLAINTIFFS' EXPERT, BRENT KORZECKI, OR, IN THE ALTERNATIVE, EXCLUDE
THE TESTIMONY OF BRENT KORZECKI

_____

COME NOW DEFENDANTS, Clay and Wright Insurance, Inc. and Debbie McNeal's Memorandum in Support of Defendants' Motion to Strike Plaintiffs' Expert, Brent Korzecki or in the alternative, exclude the testimony of Brent Korzecki.

### I. INTRODUCTION AND SUMMARY OF ARGUMENTS

The case, in essence, arises from alleged damages suffered by Plaintiffs because of their inability to procure Worker's Compensation insurance due to the alleged wrongful action of Defendants Clay and Wright and McNeal. Plaintiffs, Andrea Mihelic and Most Valuable Personnel, identified Brent Korzecki as their expert in the field of business and insurance. Mr. Korzecki was deposed on December 21, 2015 and the referenced portions of his deposition testimony are attached as collective Exhibit A.

1

Plaintiffs' designated expert, Brent Korzecki ("Korzecki") should be excluded from testifying in this matter as an expert for the following reasons: (1) Korzecki is not qualified to testify as an expert in this matter; (2) Korzecki's opinions are unreliable and not relevant and should, therefore, be excluded; and (3) Korzecki's testimony will not assist the trier fact in understanding the issues in this case. In the alternative, and only if the court will not exclude Korzecki as an expert entirely, Defendants move to exclude Korzecki's testimony as to each of his opinions, as explained more fully below.

## II. LEGAL STANDARD

Under Federal Rule of Evidence 702 and the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) line of case law, the trial judge performs a gatekeeping role to ensure that expert testimony is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The *Daubert* reliability analysis applies to, among other things, "the facts underlying the expert's opinion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the Rule 702 test."*Mathis v. Exxon Corp.,* 302 F.3d 448, 459–60 (5th Cir.2002) (citing *Bourjaily v. United States,* 483 U.S. 171, 173 (1987)). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

Pursuant to Rule 703 of the Federal Rules of Evidence, "an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. However, a court may "exclude the expert testimony if testimony lacks adequate foundation or is not based on data reasonably relied upon by experts in particular field." *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308 (5th Cir. 1990). Nothing in rule governing bases of opinion testimony by experts requires a court to admit opinions based on facts that are indisputably wrong. *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320 (5th Cir. 1996).

Numerous courts have rejected expert opinions on the basis that they are inconsistent with the underlying facts and data, not supported by sufficient facts or data, and/or are conclusory. *See, e.g., Burleson v. Texas Dep't of Crim. Justice*, 393 F.3d 577, 587 (5th Cir.2004) (affirming exclusion of expert testimony "based on speculation, guesswork, and conjecture"); *Chambers v. Exxon Corp.*, 2001 WL 43538, at * 2 (5th Cir. Jan. 5, 2001) (affirming exclusion of expert testimony and summary judgment for defense where plaintiff's expert opinions that benzene exposure caused his injury were not supported by reliable data and thus were based only on the *ipse dixit* of the experts); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir.1998) (excluding speculative testimony as lacking scientific validity); *see also Edmonds v. Illinois Cent. Gulf R.R. Co.*, 910 F.2d 1284, 1287 (5th Cir.1990) ("Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."); *Kemp v. Biolab, Inc.*, 2005 WL 1595669, at * 3, 7 (S.D. Miss. June 22, 2005) (excluding expert testimony and granting summary judgment where expert's opinion was in direct contradiction to the underlying facts in the case); *Taylor v. Pharmacia-Upjohns Co., LLC*, 2005 WL 3502052, at * 5 (S.D.Miss. Dec. 19, 2005) (excluding a doctor's expert testimony because "there is lacking in the record any evidence suggesting any medical or scientific basis for [the doctor's] opinion other than his

3

statement that it is so.").

*Daubert* challenges customarily fall into three (3) general categories. First, a challenge of the expert's *qualifications*, since Fed.R.Evid. 702 requires "scientific, technical, or specialized knowledge ... [from an expert witness who is qualified because of his] knowledge, skill, experience, training, or education...." *Id*. Second is the *reliability* of the expert's testimony for a failure to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. (quoting *Kumho Tire*, 526 U.S. at 152). Third is the *relevance* of the expert's opinions. *Id*. (citing Fed.R.Evid. 702; *Pipitone*, 288 F.3d at 245). To assist the jury in its determination, the testimony must "fit" the facts of the case, *i.e.*, there must be "a valid connection between the expert testimony and the pertinent inquiry." *First Assembly of God Church v. Fondren*, 2003 WL 25685226 *6 (E.D.Tex. Jan. 8, 2003)(citing *Daubert*, 509 U.S. at 591). In the present case, Defendants challenge the expert testimony of Mr. Korzecki on all three grounds.

### III. LEGAL ARGUMENT

#### A. Korzecki Is Not Qualified To Testify As An Expert In This Case.

Korzecki lacks sufficient knowledge, experience, familiarity with the case, and expertise in the field to testify as an expert in this case. "Expert testimony 'serves to inform the jury about affairs not within the understanding of the average man.' *United States v. Moore,* 997 F.2d 55, 57 (5th Cir.1993). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir.1999). 'Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony.'" *O'Hara v.*

4

*Travelers*, No. 2:11-CV-208-KS-MTP, 2012 WL 3062300, at *7 (S.D. Miss. July 26, 2012) (citing *Sullivan v. Rowan Cos.,* 952 F.2d 141, 144 (5th Cir .1992)).

"Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* The testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.,* 555 F.3d 383, 388 (5th Cir.2009).

Korzecki is not qualified to testify as an expert in the field of business and insurance in this case. Korzecki does not have the requisite familiarity with the facts of the case to make an informed expert decision. Korzecki did not review the depositions of Plaintiff, Andrea Mihelic; her husband, Marvin Vining; Insurance agent and defendant, Debbie McNeal; Owner of Clay and Wright, Louis Clay; and Rule 30(B)(6) representative for Clay and Wright, Jo Beth Glassco. (Korzecki Dep. 85:1–11). Korzecki also did not review documents produced during discovery, nor the expert disclosures of Defendants' experts in forming his opinions. (Korzecki Dep. 84:18; 85:12–13). Based on the failure to review the pertinent materials in the case, Korzecki does not have sufficient knowledge to provide a qualified opinion in this case. Furthermore, his lack of knowledge negates his qualification and the reliability of each of his opinions. (Korzecki Dep. 82–85).

While Korzecki asserts that he has been a broker in the financial and insurance industry for 10 years, Korzecki only worked with procuring insurance for staffing agencies for three years while employed at Heritage Insurance Agency. (See Korzecki Resume attached as Exhibit B and Korzecki Expert Report attached as Exhibit C). Prior to this employment with Heritage, Korzecki had never procured an insurance policy for a staffing agency. (Korzecki Dep. 27:1–6).

Of note, Korzecki has not worked in the field of insurance and staffing agencies since January 2014. (Korzecki Dep. 44:13-15; 48:11–25). Therefore, he is no longer dealing with the day to day inter-workings of the insurance industry relating to Workman's Compensation Insurance policies for staffing agencies. Korzecki has never testified as an expert prior to this case. (Korzecki Dep. 13:2–3).

Furthermore, Korzecki asserts in his opinions that the demise of MVP was a result of the inability of MVP to obtain Workman's Compensation Insurance after Chartis did not renew the coverage for MVP. One option for MVP was to use an assigned risk pool to place the Workman's Compensation insurance. However, Korzecki admitted that he had limited knowledge regarding the assigned risk pool in Tennessee, which was a possible placement for Workmen's Compensation insurance, and has never placed a staffing company in an assigned risk pool in the past. (Korzecki Dep. 133:21–135:17). Therefore, he is not qualified to opine that MVP could not have obtained Workman's Compensation insurance.

Korzecki should be stricken as an expert based on his lack of knowledge of the case. In Plaintiffs' expert disclosures, Plaintiff s state in regard to the disclosure of Korzecki as an expert, "This analysis and opinion testimony will be based upon his education and experience in the field of commercial insurance, his review of MVP's insurance policy applications written by McNeal and/or Clay & Wright Insurance, Inc. . . ." (Pltf's Exp. Disc. 3). In Korzecki's deposition, he testifies that he <u>never reviewed</u> any insurance policy applications for MVP. (Korzecki Dep. 71:15–25). Korzecki further explained that he <u>never reviewed</u> the financial records for MVP and admitted that it would be important for him to do so in order to provide a full assessment of the status of MVP. (Korzecki Dep. 163:6–15). Korzecki was <u>not aware</u> that MVP had never filed a tax return since the time of the original formation and that Mihelic also

6

had a tax liability with the IRS for over $600,000. (Korzecki Dep. 162:15–17; 19–20). Korzecki had no knowledge that MVP was recently fired by a client and had not yet obtained a prospective client at the time Mihelic contacted Korzecki regarding the Workman's Compensation Insurance Policy. (Korzecki Dep. 158–159). Korzecki was not aware that MVP had been administratively dissolved at the time he attempted to procure insurance for MVP and began developing his opinions regarding the case. (Korzecki Dep. 162:12–14). Korzecki was not aware that Mihelic and MVP had filed this lawsuit at the time he worked with MVP to obtain Workman's Compensation Insurance in November 2013. (Korzecki Dep. 118:10–21). Korzecki was not aware that MVP did not make payroll at periods of time. (Korzecki Dep. 162:24–163:5). Korzecki neither reviewed the records from TaxGuard nor the franchise and excise tax returns for MVP. (Korzecki Dep. 84).

Furthermore, Korzecki cannot be qualified as an expert as to the business aspects of MVP despite Plaintiff's identification of Korzecki as an expert in the field of business and insurance. (Pltf's Expert Disclosure, DOC ID#132-1, Page ID#540). As noted above, Korzecki does not have knowledge relating to the business aspects or financial state of MVP. Furthermore, in his deposition, Korzecki testified that he was only offered an expert opinion as to the insurance aspects of the case. (Korzecki Dep. 163). Therefore, by his own testimony, Korzecki cannot be qualified as a business expert in this action.

Based on the foregoing, it is clear that Korzecki not only lacks sufficient experience and knowledge in the area of insurance and business to testify as an expert in this particular case but he also fails to have sufficient knowledge regarding this action in order to provide a competent expert opinion. Brent Korzecki should be excluded as an expert for Plaintiffs as he is not qualified to testify pursuant to Rule 702 of the Federal Rules of Evidence.

### *B. Korzecki's Opinions Are Neither Reliable or Relevant And Should Be Excluded.*

Korzecki's opinions are based on mere speculation, supposition, and conjecture, are not based on sufficient reliable data and should, therefore, be excluded. An opinion that relies on <u>insufficient and erroneous information</u> is not reliable. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (emphasis added). Reliability of the opinion requires more than "subjective belief or <u>unsupported speculation</u>." *In re Air Crash Disaster of New Orleans, La.*, 795 F.2d 1230, 1234 (5th Cir. 1986)(emphasis added). A court should analyze reliability by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony must "be derived by the scientific method" and "supported by appropriate validation--*i.e.*, 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 590, 592-93. Under *Daubert,* "the gatekeeping inquiry must be 'tied to the facts' of a particular 'case.' " *Kumho,* 526 U.S. at 150.

If not reliable, evidence constitutes " 'unsupported speculation or subjective belief.' " *Johnson v. Arkema, Inc.,* 685 F.3d 452, 459 (5th Cir.2012) (quoting *Daubert,* 509 U.S. at 590). *Daubert* "provides an illustrative list of factors that may aid a court in evaluating reliability." *Mathis*, 302 F.3d at 460. These factors include

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted in the scientific community.

*Kumho,* 526 U.S. at 149–50 (citing *Daubert,* 509 U.S. at 592–94). "These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir.2007)."But the existence of

8

sufficient facts and a reliable methodology is in all instances mandatory." *Id* . "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." Previto v. Ryobi N. Am., Inc., 766 F. Supp. 2d 759, 771 (S.D. Miss. 2010).

In *Kumho*, the United States Supreme Court emphasized that the *Daubert* analysis is a flexible one, and that particular *Daubert* factors may be more or less pertinent to the district court's inquiry, depending upon the nature of the issue, the particular area of expertise, and the subject of the expert's testimony. *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167. Thus, these factors relate to non-technical experts and the reliability of their opinions, such as Korzecki's. This Court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.12 "[T]he proponent of expert testimony ... has the burden of showing that the testimony is reliable," *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir.2004), and must establish the admissibility requirements "by a preponderance of the evidence," *Previto v. Ryobi N. Am., Inc*., 766 F. Supp. 2d 759, 764-65 (S.D. Miss. 2010) (citing *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003))

Each of Korzecki's opinions is wholly unreliable and lacks sufficient data to support his opinion. Korzecki's opinions are merely based on speculation and subjective opinion and should therefore be excluded. Korzecki presented five separate opinions in his expert report which will be addressed separately below.

Korzecki first summarizes his opinions in the first paragraph of the expert report and alleges that Clay and Wright and McNeal committed gross negligence, bad faith, negligence and violated the standard of good faith and fair dealing. In his deposition, Korzecki attempted to

9

define these terms but failed to cite to any basis for his assertion of these claims under than his subjective opinions and beliefs. (Korzecki Dep 124–132).

1) Mr. Korzecki does not rely on sufficient data in either his expert report or deposition testimony to support the opinion that McNeal and Clay and Wright were negligent in the classification of MVP as a consulting company, rather than a staffing company, for the General Liability policy with Zurich Insurance Group. (Korzecki Dep. 139; Korzecki Expert Report, Doc ID 132–1 Page ID 554). This issue is also not relevant to the allegations in the Second Amended Complaint. Korzecki presents no documentary support for the claim of negligence by improper classification. Korzecki does not cite to any regulations, manuals, guidelines, statutes or codes to support his opinion that MVP was not properly classified on the Zurich General Liability Insurance Policy. Korzecki asserts that McNeal violated the standard of care but does not cite to any standard of care or attempt to define the term in his report or deposition.

This opinion is not relevant to the allegations in the Second Amended Complaint and this should be excluded and does not fit with the issues in this case. *Korzecki admits that there was no specific harm or damage to MVP as a result of the alleged misclassification on the Zurich Policy.* (Korzecki Dep. 139:17-21). He admits that there "could" have been an effect but there was not. Korzecki admits that the general liability policy with Zurich had no impact on the demise of MVP. The Zurich policy and any alleged misclassification has no relevance to the allegations in the Second Amended Complaint regarding the subsequent Traveler's policy. Therefore, Korzecki's first opinion should be excluded as an unreliable and irrelevant opinion under *Daubert*.

2) Mr. Korzecki does not rely on sufficient data in either his expert report or deposition testimony to support the opinion that McNeal and Clay and Wright did not properly classify

10

MVP's workman's compensation codes according to state for the Travelers Insurance in 2010. (see Exhibit C, Doc ID 132–1 Page ID 554; Korzecki Dep. 139-146). Korzecki asserts that the classification codes were not correct on the Travelers policy. (Korzecki Dep. 140: 2–9). Mere subjective opinion is not sufficient evidence to support expert testimony. *See In re Air Crash Disaster of New Orleans, La.*, 795 F.2d 1230, 1234 (5th Cir. 1986)(holding that reliability of the opinion requires more than "subjective belief or unsupported speculation"). Here, Korzecki does not present reliable evidence to support his opinion. He fails to provide a reference to any document, rule, guideline, law, statute or code which support his subject opinion that the classification codes were incorrect. Korzecki also shows no evidence to support a direct correlation between the alleged misclassification, the cancellation of the Traveler's policy and the subsequent demise of MVP. (Korzecki Dep. 139-146). Based on the foregoing, Plaintiff's opinion is not sufficiently supported by evidence to be considered reliable.

    3) Mr. Korzecki does not rely on sufficient data in either his expert report or deposition testimony to support the opinion that McNeal is negligent by failing to provide a certificate of insurance to the consulting company. (see Exhibit C, Doc ID 132–1 Page ID 555; Korzecki Dep. 147-150). Korzecki asserts that McNeal should have given a certificate of insurance to Travelers, which would have, in turn, led to Travelers' discovery of the miscoding at an earlier time and would "have acted on the situation according." (see Exhibit C, Doc ID 132–1 Page ID 554). Korzecki does not provide a clear definition of "have acted on the situation accordingly." (Korzecki Dep. 148). Furthermore, Korzecki provides no evidence or references to guidelines, code or a regulation requiring that a Certificate of Insurance be issued to Travelers without a request by Travelers. Korzecki presents no evidence that McNeal did not <u>in fact</u> produce a Certificate of Insurance to Travelers. Korzecki provides no support for the conclusion that

Travelers would have taken any action based on the Certificate of Insurance. Korzecki is merely speculating that something *could have* happened. Mere speculation is not sufficient reliable evidence to support expert opinion. The entire opinion is mere supposition of what he "understands" to have happened and what he believes "could" have happened. An opinion that relies on <u>insufficient and erroneous information</u> is not reliable. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (emphasis added); *see In re Air Crash Disaster of New Orleans, La.*, 795 F.2d 1230, 1234 (5th Cir. 1986)(holding that reliability of the opinion requires more than "subjective belief or unsupported speculation"). The problem with this opinion is that Korzecki does not provide an opinion relying on what <u>did</u> actually happen. Furthermore, since the opinion is merely subjective and has no basis in fact, the opinion is not relevant to the case at hand. Expert testimony cannot be based on such subjective belief and this opinion should be excluded.

4) Korzecki relies on incorrect and insufficient data to support the opinion Clay and Wright participated in an alleged illegal practice called "rebating" to the detriment of MVP. (Korzecki Dep. 150–163). Korzecki asserts that Clay and Wright was prohibited by law from advancing a down payment or advancing a premium on the Worker's Compensation Policy for MVP. In his expert report, Korzecki asserts that the actions by Clay and Wright were prohibited by Mississippi law pursuant to MS Code § 83-3-121. (Exhibit C, Doc ID 132–1 Page ID 555). Contrary to Korzecki's opinion, Mississippi law does not prohibit an insurance company from providing a down payment for a premium and allowing an insured to pay the company back. Mississippi Code Annotated §83-3-121 states:

> Nothing herein contained shall be construed as prohibiting the payment of commissions or other compensation to duly licensed agents, nor as prohibiting any participating insurer from distributing to its policyholders dividends, savings, or the unused or unabsorbed portion of premiums or premium deposits nor as

12

> prohibiting any duly licensed agent from **advancing an insurance premium for the insured with or without interest** thereon subject to the rules and regulations of the Mississippi Department of Insurance.

Miss. Code Ann. §83-3-121. Therefore, the basis of Korzecki's opinion regarding rebating lacks merit and is therefore, unreliable. In addition, Korzecki's reliance on Tenn. Code Ann. § 56-8-104 does not support his contention that Tennessee law prohibits the actions by Clay and Wright. Tenn. Code Ann. § 56-8-104 defines rebating and does <u>not</u> list the actions by Clay and Wright as a form of inducement or rebating. Tenn. Code Ann. § 56-8-104 Korzecki also failed to establish any negative outcome from this alleged rebating as he could only testify as to what "could have happened." (Korzecki Dep. 157: 1–15). Furthermore, Korzecki contradicted his own expert report opinion during his deposition, when he testified that he was aware that the Mississippi statute does not prohibit agents from advancing an insurance premium or an insured with or without interest. (Korzecki Dep. 156:12–15). Korzecki attempts to draw a distinction between a down payment and a premium as the reason why the acts should be considered rebating. However, he does not provide any support for this distinction. He is not an attorney and has no qualifications to testify about the statute.

Therefore, Korzecki's opinion that the actions by Clay and Wright were prohibited by Tennessee and Mississippi law is based on incorrect data and wholly unreliable. This Court should exclude all of Korzecki's opinion.

5) Korzecki does not rely on sufficient data in either his expert report or deposition testimony to support the opinion that the Chartis policy was cancelled at *agent's request* which, according to Korzecki, constituted bad faith on the part of McNeal. (see Exhibit C, Doc ID 132–1 Page ID 556; Korzecki Dep. 164-166). Korzecki asserts that the Chartis Policy was cancelled at the "agent's request" based on a telephone call with an unnamed employee from Chartis.

13

Korzecki provides no documentation to support his assertion that the policy was cancelled at an agent's request. (Korzecki Dep. 164-166). Korzecki relies on blatant hearsay and cannot identify the referenced Chartis employee to support his claims. *See Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (finding that an opinion that relies on <u>insufficient and erroneous information</u> is not reliable); *In re Air Crash Disaster of New Orleans, La.*, 795 F.2d 1230, 1234 (5th Cir. 1986)(holding that reliability of the opinion requires more than "subjective belief or unsupported speculation").

Furthermore, this opinion should be excluded on the grounds that his opinion is contradicted by documentary evidence. Korzecki was not aware of the fact that Chartis sent two notices of cancellation due to nonpayment of premiums to MVP on January 16, 2013 and June 12, 2013. (Notices of Cancellation attached as Exhibit D; Korzecki Dep. 179–180) On August 5, 2013, Chartis sent a notice of non-renewal due to "account premium is below minimum guidelines." (Notice of Non-Renewal attached as Exhibit E; Korzecki Dep. 180). Korzecki admits that he was not aware of the two cancellation notices and was not aware that the notice of non-renewal showing an expiration of policy date of October 22, 2013, was sent to MVP on August 5, 2013, 2 months prior to Mihelic contacting him regarding insurance issues. (Korzecki Dep. 179–180). This undisputed evidence directly contradicts Korzecki's assertions that Mihelic did not receive notice until October 22, 2013 that the policy was not being renewed and directly contradicts his opinion that non-renewal was due to agent request. Furthermore, Korzecki had knowledge that the Chartis policy was not cancelled due to *agent request*. After

Korzecki's relied on this "agent request" to support his claim of bad faith on the part of Mihelic. MVP completed applications for Worker's Compensation insurance with the help of Korzecki beginning on November 11, 2013. (Korzecki Dep. 88–119; See applications attached

14

as Collective Exhibit F). Korzecki admitted that the application was completed based on information he personally received from Plaintiff, Andrea Mihelic. (Korzecki Dep. 88–89). In response to Question 18 on the application, MVP answered that prior coverage was "Cancelled for minimum premium not being met." (See Exhibit F). Therefore, Korzecki had specific knowledge that the Chartis policy had been cancelled due to a failure to meet the minimum premium, rather than at "agent's request." (Korzecki Dep. 96:4–97:2). Therefore, the court should exclude this opinion by Korzecki as it is directly contradicted by documentary proof and his deposition testimony.

Based on the foregoing, each of Korzecki's should be excluded on the grounds that his opinions are neither reliable nor relevant and are in violation of the *Daubert* standards for expert testimony.

### C. The Court should Exclude Korzecki for Failure to Satisfy Rule 702 of the Federal Rules of Evidence

Based on the foregoing, Korzecki does not satisfy Rule 702 of the Federal Rules of Evidence and should be excluded as an expert. Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702. Korzecki does not satisfy these factors. First, Korzecki will not help the trier of fact to understand the evidence or determine a fact in issue. As it has been shown above,

Korzecki has limited knowledge of the facts of the case as he failed to review depositions, discovery, financial records, which present the full picture of this action. Furthermore, Korzecki does not possess sufficient specialized knowledge to help the trier of fact to understand the evidence. Korzecki only worked in the insurance industry for three years and has not issued this type of insurance in over two years. Second, Korzecki's testimony is not based on sufficient facts or date. As stated above, he does not have a firm grasp of the facts of this case sufficient to support any of his opinions. Third, Korzecki's testimony is not based on reliable data or principles. Korzecki presents no independent authority, rules or regulations upon which he relies on to form his opinions. Fourth, Korzecki has not applied his principals to the facts of the case in a reliable way. He relies on speculation and his subjective beliefs to support his claims. As stated above, his opinions are contradicted by documentary evidence. Furthermore, as a business expert, with a finance background, Korzecki failed to review any of the financial records in this matter, even though he opines as to the cause of the closing of the business, MVP. In order to provide a qualified opinion based on reliable data to show the cause of the demise of MVP, Korzecki should have review, in the least, the financial status of MVP prior to rendering his expert opinions. Therefore, Korzecki does not satisfy the standards set forth in Rule 702 of the Federal Rules of Evidence as his testimony.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court exclude Plaintiff's Expert, Brent Korzecki as an expert in this action.

Respectfully submitted,

HAGWOOD ADELMAN TIPTON, PC
*Counsel for Defendant Clay and Wright Insurance, Inc. and Debbie McNeal*


s/Rebecca Adelman
REBECCA ADELMAN, MS BAR No. 100653
545 South Main Street, Suite 111
Memphis, TN 38103
Tel. 901.529.9313
Fax 901.529.8772
radelman@hatlawfirm.com


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the following:

Joseph D. Neyman, Jr. Esq.
Neyman Law Firm, PLLC
291 Losher St., Ste. B
P. O. Box 567
Hernando, MS 38632
jody@neymanlawfirm.com
Attorney for Plaintiff

Steven W. Pittman, Esq.
Chatham Damare' Pittman, PLLC
291 Losher Street
Hernando, MS 38632
s.pittman@cdplawfirm.com
Attorneys for Plaintiff

This 11th day of January, 2016.

s/Rebecca Adelman